IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| TOLLEF REYERSON, | ) | |
| | ) | Case No. CV-06-493-E-BLW |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM DECISION** |
| v. | ) | **AND ORDER** |
| | ) | |
| NATIONAL UNION FIRE | ) | |
| INSURANCE OF PITTSBURGH, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## INTRODUCTION

The Court has before it Plaintiff's Motion to Amend Complaint (Docket No. 37), Defendant's Motion for Summary Judgment (Docket No. 44), Defendant's Motions to Strike (Docket Nos. 54 & 73), Plaintiff's Motion to Strike (Docket No. 81), Defendant's Motion in Limine (Docket No. 57), and Plaintiff's Motions to Compel (Docket Nos. 32, 89, 105 & 117). The Court heard oral argument on the motions on March 11, 2008. Plaintiff then sought permission, which the Court granted, to file supplemental briefs and affidavits supporting his temporary disability benefits claim. However, on March 24, 2008, Plaintiff informed the Court via letter that he no longer contests the temporary disability benefits payments, and that he would not file additional documents. Accordingly, the Court

**Memorandum Decision and Order - 1**

now issues the following decision.

## BACKGROUND

Tollef Reyerson was insured under a National Union Fire Insurance of Pittsburgh ("National Union") truckers occupational accident policy through his employer, C.R. England.  On December 1, 2004, Reyerson was injured in an accident while riding in the sleeper compartment of a semi-tractor.  Reyerson made a claim on the National Union policy.  Reyerson contends that National Union paid some, but not all, of his medical bills covered by the policy.  National Union contends that it paid all of Reyerson's covered expenses, and that it is therefore entitled to summary judgment on Reyerson's claims.

## ANALYSIS

### I.   Summary Judgment Standard

One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources."  *Id.* at 327.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise

properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).

The evidence must be viewed in the light most favorable to the non-moving party, *id*. at 255, and the Court must not make credibility findings. *Id.*  Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).  On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc).  To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Id.* at 256-57.  The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue

of material fact exists.  *Celotex, 477 U.S. at 324*.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment."  *Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1029 (9th Cir.2001)* (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)).  Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts."  *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

Only admissible evidence may be considered in ruling on a motion for summary judgment.  *Orr v. Bank of America, 285 F.3d 764, 773 (9th Cir.2002)*; *see also* Fed.R.Civ.P. 56(e).  In determining admissibility for summary judgment purposes, it is the contents of the evidence rather than its form that must be considered.  *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003).  If the contents of the evidence could be presented in an admissible form at trial, those contents may be considered on summary judgment even if the evidence itself is hearsay.  *Id.* (affirming consideration of hearsay contents of plaintiff's diary on summary judgment because at trial, plaintiff's testimony of contents would not be hearsay).

In order to preserve a hearsay objection, "a party must either move to strike

**Memorandum Decision and Order - 4**

the affidavit or otherwise lodge an objection with the district court." *Pfingston v. Ronan Engineering Co.*, 284 F.3d 999, 1003 (9th Cir. 2002).  Statements in a brief, unsupported by the record, cannot be used to create an issue of fact. *Barnes v. Independent Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995).  The Circuit "has repeatedly held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment." *Beyene v. Coleman Sec. Services, Inc.*, 854 F.2d 1179, 1182 (9th Cir.1988).  Authentication, required by Federal Rule of Evidence 901(a), is not satisfied simply by attaching a document to an affidavit. *Id.*  The affidavit must contain testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of the document. *Id.*

## II.    Defendant's Motion for Summary Judgment

National Union contends that it did not breach the insurance contract because Reyerson is not entitled to any additional benefits under the contract.  The benefits are divided into three categories: (1) temporary total disability benefits; (2) continuous total disability benefits; and (3) accident medical expense benefits.

### A.    Temporary and Continuous Total Disability Benefits

For the reasons stated during oral argument, the Court orally granted Defendant's Motion for Summary Judgment as it relates to the temporary and

**Memorandum Decision and Order - 5**

continuous total disability benefits.  This order memorializes that decision.[1]

### B.      Accident Medical Expense Benefits

### 1.      Expenses for Psychological Care

National Union contends that, according to the policy, accident medical expense benefits do not cover expenses for psychological counseling and related medications.  Generally, Idaho courts construe insurance contracts in a light most favorable to the insured and in a manner which provides full coverage for the indicated risks rather than narrowing its protection.  *Cascade Auto Glass, Inc. v. Idaho Farm Bureau Ins. Co.*, 115 P.3d 751, 754 (Idaho 2005).  Nevertheless, "[i]n construing an insurance policy, the Court must look to the plain meaning of the words to determine if there are any ambiguities."  *Id.*  This determination is a question of law for the Court, and the Court must construe the insurance policy as a whole, not by isolated phrases.  *Id.*  (Internal citation and quotation omitted).  Like other contracts, insurance policies are ambiguous if they are reasonably subject to conflicting interpretations.  *Id.*  However, "where the policy language is clear and unambiguous, coverage must be determined, as a matter of law, according to the plain meaning of the words used."  *Id.* at 753 (Internal citation and

---

[1] Plaintiff also informed the Court via letter that he no longer contests the temporary disability benefits payments.

**Memorandum Decision and Order - 6**

quotation omitted).

Here, the policy states in relevant part that "[i]f an Insured Person suffers an Injury that requires him or her to be treated by a Physician, . . . the Company will pay the Usual and Customary Charges incurred for Medically Necessary Covered Accident Medical Services received due to that Injury. . . ." (Pine Aff., Ex. A, p. 12). The policy defines Injury as follows:

> **Injury** means bodily injury to an insured Person caused by an Occupational accident while coverage is in force under this Policy, which results directly and independently of all other causes in a Covered Loss. All injuries sustained by an Insured Person in any one accident shall be considered a single injury.

(Pine Aff., Ex. A, p. 3).

Based on this language, National Union contends that the policy covers only bodily injury, which does not include Reyerson's psychological care. The term "bodily injury" is not defined in the policy, and Idaho courts have not specifically addressed or defined "bodily injury." Other courts, such as the Wyoming Supreme Court, which have addressed the term, have stated that "[a] common sense reading of the term 'bodily injury,' without more, may indeed connote physical harm rather than emotional harm." *Evans v. Farmers Insurance Exchange*, 34 P.3d 284, 286 (Wyo. 2001). In its decision, the Wyoming Supreme Court noted that "the overwhelming majority of jurisdictions which have considered the issue hold that

**Memorandum Decision and Order - 7**

'bodily injury' standing alone or defined in a policy as 'bodily injury or harm, sickness or disease' is unambiguous and encompasses only physical harm." *Id.* (Internal quotations and citations omitted).

Other courts have expanded the analysis of bodily injury and focused on whether the related emotional injuries include physical manifestations. *See e.g., SL Industries, Inc. v. American Motorists Ins. Co.*, 607 A.2d 1266, 1274 (N.J. 1992). The New Jersey Supreme Court has held that when emotional distress results in physical manifestations, the term bodily injury is ambiguous and must be construed in favor of the injured. *SL Industries*, 607 A.2d at 1273 (citing *Voorhees v. Preferred Mut. Ins. Co.*, 607 A.2d 1255, 1261 (N.J. 1992). Still, the court recognized that although the difficulty in distinguishing between mental and physical injuries sometimes justifies characterizing bodily injury as ambiguous, the term is not ambiguous with respect to all types of emotional injuries. *Id.* The court stated that the phrase should be analyzed on a case-by-case basis to determine whether the alleged injuries are sufficiently akin to physical injuries to render the term "bodily injury" ambiguous. *Id.*

Citing numerous cases from several jurisdictions (none from Idaho), the New Jersey Supreme Court ultimately concluded that "in the context of purely emotional distress, without physical manifestations, the phrase 'bodily injury' is

**Memorandum Decision and Order - 8**

not ambiguous.  Its ordinary meaning connotes some sort of physical problem." *Id. at 1274*.  The court found unpersuasive, but acknowledged, limited case law (none from Idaho) construing bodily injuries to include emotional injuries which did not result in physical manifestations.  *Id.*

Here, Reyerson does, in fact, claim that he suffered physical manifestations in the form of nightmares, nausea, stomach pain, fatigue, insomnia, shaking, tremors, headaches, and hypertension.  Moreover, Reyerson's treating physician, Clay Campbell, M.D., states that these symptoms are caused by Reyerson's post traumatic stress disorder and major depressive disorder, which were brought on by the accident.  (Campbell Aff., p. 2).  Under the circumstances of this case, the Court finds that the term "bodily injury," as used in the National Union policy, is ambiguous.  It is unclear whether "bodily injury" applies to psychological and/or emotional injuries resulting in physical manifestations.

National Union further contends that even if the policy covers psychological care, Reyerson can only seek coverage for care given by a physician.  The policy defines physician as follows:

> **Physician** means a practitioner of the healing arts acting within the scope of his or her license who is not: (1) the Insured Person; (2) an Immediate Family Member; or (3) a Practitioner retained by the Policy holder.

(Pine Aff., Ex. A, p. 4).  National Union suggests that Reyerson's counseling

**Memorandum Decision and Order - 9**

sessions, presumably those conducted by Shaun Tobler, are not covered.

As stated above, the policy states that "[i]f an Insured Person suffers an injury that requires him or her to be treated by a Physician, . . . the Company will pay the Usual and Customary Charges incurred for Medically Necessary Covered Accident Medical Services received due to that injury. . . ." (Pine Aff., Ex. A, p. 12). The policy defines medically necessary as follows:

> **Medically Necessary** means that a Covered Accident Medical Service: (1) is essential for diagnosis, treatment or care of the Occupational Injury for which it is prescribed or performed; (2) meets generally accepted standards of medical practice; and (3) is ordered by a Physician and performed under his or her care, supervision or order.

(Pine Aff., Ex. A, p. 13).

Here, Dr. Campbell states that he provided Reyerson treatment for his depression and post traumatic stress disorder, and that he supervised Shaun Tobler in his treatment of Reyerson. (Campbell Aff., p.3). The policy unambiguously covers such care because it was performed under Dr. Campbell's care, supervision or order. (Pine Aff., Ex. A, pp. 4,13). Accordingly, because the term "bodily injury" is ambiguous as used in the National Union policy, and because the care provided by Shaun Tobler is covered by the policy, the Court will deny National Union's motion for summary judgment as it relates to Reyerson's claim for

coverage of mental and psychological care pursuant to the accident medical expense benefits provision.[2]

### 2.     Accident Medical Expense Benefits Unrelated to Psychological Care

Reyerson filed an affidavit listing a number of additional unpaid medical expenses unrelated to his psychological care.  (Reyerson Aff., Docket No. 49). National Union responded by stating that it timely paid all covered expenses except in circumstances where Reyerson failed to file a claim.[3]  (Pine Aff., p.2).  As discussed above, to carry his burden on summary judgment, a defendant need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case.  *See* *Fairbank,* 212 F.3d at 532.  It is axiomatic that a beneficiary must submit a claim in order to receive coverage.  Thus, National Union meets its burden with respect to the unsubmitted claims by pointing out that it never received a request for payment.

The burden therefore shifts to Reyerson to produce evidence sufficient to

---

[2] Although the Court must construe any ambiguities in an insurance policy against the insurer, the final interpretation of an ambiguous policy is nevertheless a question of fact for the jury. *Cascade Auto Glass, Inc. v. Idaho Farm Bureau Ins. Co.*, 115 P.3d 751, 754 (Idaho 2005).

[3] National Union acknowledged three potential exceptions, which the Court will discuss in detail below.

**Memorandum Decision and Order - 11**

support a jury verdict in his favor.  *Fairbank,* 212 F.3d at 256-57.  The non-moving

party must go beyond the pleadings and show "by . . . affidavits, or by the

depositions, answers to interrogatories, or admissions on file" that a genuine issue

of material fact exists.  *Celotex,* 477 U.S. at 324.  A review of the evidence,

including Reyerson's affidavits, reveals no evidence of claim forms or requests for

payment regarding the vast majority of the alleged unpaid medical bills. The Court

will therefore grant summary judgment in favor of National Union on those claims

because Reyerson failed to meet his burden of production.

Reyerson also makes several assertions that claims were not paid in full.

However, in those instances, National Union states in its Explanation of Benefits

that it denied certain amounts because they exceeded the usual and customary

charges.  (See e.g., Reyerson Aff., Ex. C, Docket No. 49).  Moreover, the policy

clearly states that "the Company will pay the Usual and Customary Charges

incurred for Medically Necessary Covered Accident Medical Services received due

to that injury. . . ."  (Pine Aff., Ex. A, p. 12).  Reyerson offers no evidence

rebutting National Union's contention that it paid the usual and customary charges.

Accordingly, National Union is entitled to summary judgment on these claims as

well.

Finally, Reyerson alleges three categories of claims where National Union

**Memorandum Decision and Order - 12**

denied coverage even when Reyerson submitted a claim or sought authorization for care.  The first claim relates to chiropractic care, where National Union initially denied benefits due to a misapplied rider.  However, once National Union realized that the cap on benefits did not apply to Reyerson, National Union paid the claims.

The second claim relates to a claim for medical care given by University Hospital in New York.  Again, although National Union concedes that it took approximately a year to straighten out this claim, National Union ultimately paid the claim.

Third, Reyerson asserts that he did not receive needed care from various care providers because National Union told the care providers in advance that they would not cover all or some of the costs for such care.  However, Reyerson offers only his own inadmissible hearsay statements in support of these allegations.[4] (Reyerson Aff., Docket No. 49).  For example, in his affidavit, Reyerson states that "Defendant repeatedly told Dr. Perot's office that they could not find me. . .," that "the hospital was informed by AIG, initially, that they had no insured under my name," and that "Defendant has not paid this provider because they told them that my employer was not covered under the policy."  (Reyerson Aff., pp. 4 & 10).

---

[4] Although National Union did not file a motion to strike Reyerson's statement, counsel for National Union did offer a hearsay objection to the statements at oral argument, thus preserving the objection for purposes of the motion.  *Pfingston v. Ronan Engineering Co.,* 284 F.3d 999, 1003 (9th Cir. 2002).

**Memorandum Decision and Order - 13**

Reyerson's inadmissible hearsay does not fulfill his burden.

With respect to Reyerson's last hearsay statement, Reyerson did provide some sort of printout entitled "Screen Print on Wednesday, November 21, 2007," which seems to memorialize conversations between a debt collector and National Union and/or between a debt collector and Reyerson.  However, Reyerson has not provided the Court with any authentication of the document, any information about who created it, where it came from, or any other explanation of the document.  As noted above, "documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment."  *Beyene*, 854 F.2d at 1182.  Moreover, Reyerson has not provided the Court with any affidavits, deposition testimony, etc. from any of the care providers.  Without more, Reyerson's additional accident medical benefits claims fail, and the Court will grant summary judgment in favor of National Union on these claims.

## III.   Bad Faith Claims

National Union seeks dismissal of Reyerson's bad faith claim.  In Idaho, an insured must prove the following elements in order to recover on a bad faith claim: "(1) the insurer intentionally and unreasonably denied or withheld payment; (2) the claim was not fairly debatable; (3) the denial or failure to pay was not the result of a good faith mistake; and (4) the resulting harm is not fully compensable by

contract damages." *Lucas v. State Farm Fire & Cas. Co.*, 963 P.2d 357, 360 (Idaho 1998) (citing *White v. Unigard Mutual Ins.Co.*, 730 P.2d 1014 (Idaho 1986).

Here, the only claims which potentially rise to the level of bad faith are the claims where National Uniion delayed payment for a significant period of time – the claims related to chiropractic care and the claim for medical care given by University Hospital in New York.[5]  However, when considered in the context of Reyerson's somewhat complex case, the Court cannot find that these limited mistakes were intentional and unreasonable, or that the initial denial or failure to pay was not the result of a good faith mistake.  A review of the entire case reveals that National Union paid tens of thousands of dollars over several years for Reyerson's care, and that National Union paid the vast majority of Reyerson's claims, both in number and amount, without contest.[6]  Although the Court suggested at oral argument that Reyerson may have a bad faith claim based on a

_____

[5] The denial of claims for psychological care do not support a bad faith claim because, as discussed above, there is a question as to whether the claims are covered by the policy, and therefore the claims are fairly debatable.

[6] The Court notes that it combed through the voluminous affidavits and exhibits in this matter, which included many claims by Reyerson, some for as little as $4.00.  The Court attempted to consider each and every claim, but given the number of claims and the somewhat convoluted presentation of the claims, it is possible the Court missed a claim where National Union failed to pay and failed to give a valid reason for non-payment.  However, even if that is the case, a mistake here or there on another minor claim or two does not give rise to a bad faith claim.

**Memorandum Decision and Order - 15**

pattern of denied or delayed claims, after reviewing the record in full, the Court finds that no such pattern exists.  Accordingly, the Court will dismiss Reyerson's bad faith claim.

## IV.   Motion to Amend Complaint to Add Claim for Punitive Damages

An award of punitive damages requires a bad act and a bad state of mind. The defendant must (1) act in a manner that was an extreme deviation from reasonable standards of conduct with an understanding of – or disregard for – its likely consequences, and must (2) act with an extremely harmful state of mind, described variously as with malice, oppression, fraud, gross negligence, wantonness, deliberately, or willfully.  *Meyers v. Workmen's Auto Ins. Co.*, 95 P.3d 977, 983 (Idaho 2004).

At trial, Reyerson must satisfy this standard by clear and convincing evidence.  Idaho Code § 6-1604(1).  For purposes of Reyerson's motion to amend, however, Reyerson does not need to meet this high burden – he need show only "a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages."  Idaho Code § 6-1604(2).

To meet his burden, Reyerson offers the affidavit of Darrell Lee, an insurance adjuster.  Mr. Lee essentially opines that National Union's conduct was a gross and extreme deviation from accepted adjusting standards.  Notably, Mr.

**Memorandum Decision and Order - 16**

Lee's opinion is based on the allegations of delayed and denied claims, which were the subject of the summary judgment portion of this decision.  As detailed above, most of those allegations lack evidentiary support or are otherwise without merit. In the end, only the claims related to psychological care and the claims related to delayed payments for chiropractic care and care given by University Hospital in New York offer support for Mr. Lee's opinion.  Considered in the context of Reyerson's overall case, where National Union paid the vast majority of his claims, these few missteps do not show "a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages."  Idaho Code § 6-1604(2). Having winnowed down Reyerson' meritorious claims, the Court finds that it is not reasonably likely that Reyerson can show that National Union acted in a manner that was an extreme deviation from reasonable standards of conduct with an understanding of – or disregard for – its likely consequences, or that National Union acted with an extremely harmful state of mind.  *Meyers*, 95 P.3d at 983. Accordingly, the Court will deny Reyerson's motion to amend.

**V.     Motions to Strike**

The Court will deem moot National Union's motion to strike Mr. Lee's affidavit and National Union's motion to Strike Changes to Mr. Lee's deposition. Even considering the information in the affidavit and changed deposition, the

Court will deny Reyerson's motion to amend.  The Court will also deem moot Reyerson's motion to strike the affidavit of Thomas Segalla because the information in the affidavit does not affect the Court's ruling on any of the pending motions.

## VI.    Motions to Compel

Reyerson filed four motions to compel.  Although the parties used the Court's mandatory informal mediation process before filing the first two motions, the parties failed to do so with respect to the third and fourth motions.  In the third motion, Reyerson seeks payment for expert deposition fees.  In the fourth motion, Reyerson seeks information regarding National Union's expert.  These disputes are drastically different from the disputes addressed in the other two motions.  Accordingly, the Court will deny the motions without prejudice, and require counsel to schedule a time to informally mediate the issue with Jeff Severson, the Law Clerk assigned to this case.

With regard to the first two motions to compel, much of the information sought relate to Reyerson's claims which the Court is dismissing in this order, including Reyerson's claim for temporary disability benefits, Reyerson's claim for continuous disability benefits, portions of Reyerson's accident medical benefits claim unrelated to psychological care, and Reyerson's bad faith claim.  However,

as evidenced by Reyerson's decision not to file a 56(f) motion, the information sought through the motions to compel was not necessary in deciding the motion for summary judgment.  Accordingly, at this point, the Court will deem moot the motions.  Counsel may address any portions of the motions still relevant to the remaining claims during the informal mediation with Mr. Severson.  If the parties fail to mediate the remaining issues, counsel may re-file a motion to compel addressing only the remaining relevant concerns, and the Court will address it in an expeditious manner.

## VII.   Motion in Limine

National Union seeks an in limine ruling prohibiting Reyerson's expert, Darrell Lee, from offering certain expert testimony.  Given the Court's decision to grant National Union's motion for summary judgment as it relates to all claims except Reyerson's accident medical benefits claims related to psychological care, the Court notes that, based on a review of Mr. Lee's affidavit, most if not all of Mr. Lee's opinion will have no relevance at trial.  Moreover, based on Reyerson's remaining claims in this matter, Reyerson's potential recovery, should he succeed at trial, appears extremely limited.  Therefore, the Court strongly encourages the parties to consider settling this case in its entirety before the Court even sets the case for trial.  Thus, the Court will deny without prejudice National Union's

motion in limine.  Should the case progress toward trial, The Court will allow National Union to re-file the motion after the Court sets a firm trial date.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Plaintiff's Motion to Amend Complaint (Docket No. 37) shall be, and the same is hereby, DENIED.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment (Docket No. 44) shall be, and the same is hereby, GRANTED in part and DENIED in part as explained above.

IT IS FURTHER ORDERED that Defendant's Motions to Strike (Docket Nos. 54 & 73) shall be, and the same are hereby, DEEMED MOOT.

IT IS FURTHER ORDERED that Plaintiff's Motion to Strike (Docket No. 81) shall be, and the same is hereby, DEEMED MOOT.

IT IS FURTHER ORDERED that Defendant's Motion in Limine (Docket No. 57) shall be, and the same is hereby, DENIED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that and Plaintiff's Motions to Compel (Docket Nos. 32, 89, 105 & 117) shall be, and the same are hereby, hereby DENIED WITHOUT PREJUDICE.  Counsel shall schedule a conference with Jeff Severson to attempt to informally mediate the remaining disputes before re-filing a motion to compel.

**Memorandum Decision and Order - 20**

IT IS FURTHER ORDERED that the Clerk of the Court set this case for a status conference for the purpose of setting this case for trial.  The parties should try to meet and confer in an attempt to settle this case prior to the status conference.

DATED:  **April 8, 2008**

Honorable B. Lynn Winmill
Chief U. S. District Judge